1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10   SENG H. YANG,

11            Plaintiff,                    No. CIV S-08-1027 EFB

12       vs.

13   MICHAEL J. ASTRUE,
     Commissioner of Social Security,

14

15            Defendant.                    <u>ORDER</u>

16   _____/

17        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

18   ("Commissioner"), denying her application for Supplemental Security Income ("SSI") under

19   Title XVI of the Social Security Act ("Act").  For the reasons discussed below, plaintiff's motion

20   for summary judgment or remand is denied and the Commissioner's cross-motion for summary

21   judgment is granted.

22   I.  <u>BACKGROUND</u>

23        Plaintiff, born September 10, 1959, applied for SSI on October 19, 2004.  Administrative

24   Record ("AR") 58-62.  She alleged that she became unable to work beginning January 8, 2004,

25   due to "[d]epression, migraine headaches, ulcers, post traumatic stress . . . major depression,

26   panic and anxiety attacks, complete hysterectomy, asthma, gastritis, possible diabetes, [and]

1

ringing in ear," causing "severe headaches, dizzy spells/vomiting and nausea, chronic stomach pain, mood swings, poor memory and would leave stove on without it off [sic], problems sleeping, unable to do chores or cook, unable to sit/stand due to pain to loaud [sic] noise."  AR 84.

At the time she applied for SSI, plaintiff was 44 years old.  She lives with her husband, four of her eight children, and four other relatives.  AR 58, 59, 215-216.  Plaintiff does not read or speak English.  AR 83.  Her prior work includes selling clothing with her husband at flea markets (1996-2001), and providing in-home care to her mother-in-law for three hours a day, five days a week (February 2003 to January 2004).  AR 75-82.  Plaintiff's former work selling clothing required, in an 8-hour workday, lifting and carrying no more than 10 pounds, standing up to 8 hours, walking 2 hours, sitting 5 hours, reaching and grasping 8 hours, stooping and kneeling 1 hour each.  AR 77.

At the March 8, 2007 hearing before administrative law judge ("ALJ") Robert C. Tronvig, Jr., plaintiff testified through an interpreter.  AR 313-358.  Plaintiff testified that she is married and lives with her husband and four of her children.  AR 322-324, 326-327.  She stated that she didn't know how many children she had, and didn't remember their ages; only the youngest child goes to school.  *Id.*  Plaintiff testified that she had never gone to school, did not know how long she'd lived in the United States, and did not know whether she was a U.S. citizen.  AR 325.  She later testified that she could read and once was able to write in Hmong, but doesn't know whether she learned to do so in school, and can no longer write.  AR 347. Plaintiff testified that she counts using her fingers.  AR 348.

Plaintiff testified that she does not drive because her "brain's not good," but that she had previously held a driver's license; she didn't know whether her license was currently valid.  AR 324-235.  She testified that she could not remember her work history, and did not know the source of the family income.  AR 327-328.  She stated that she could read a clock, but did not know what time she goes to bed or gets up in the morning.  AR 328, 332, 333.

Plaintiff testified that she does no cooking or housework, and has no hobbies; she does watch a few minutes of television daily.  AR 328-330.  She stated that her husband helps get their youngest child ready for school.  AR 345.  She stated that she doesn't visit with neighbors, and only occasionally talks on the phone with her mother.  AR 347.

Plaintiff testified that the morning of the hearing her husband fixed her some food, and picked out her clothes; plaintiff dressed herself, as she generally does.  She stated that she sometimes has problems with her right hand and obtains the help of her husband when dressing. AR 331.  Plaintiff testified that she cannot lift anything in her right hand due to pain, but can lift a little in her left hand.  AR 333-334.  She testified that her diabetes causes pressure in her right hand, and that is why it is painful.  AR 335.  She also testified that she has tingling in her right hand, perhaps peripheral neuropathy.  AR 343.  She testified that she can walk a few minutes, sit a little longer, and has problems walking up ramps and stairs, balancing, stooping and bending. AR 334.  In response to the question, "Do you have problems kneeling?" plaintiff stated, "My chest is painful, so that's why I have problems."  *Id*.  Plaintiff stated that she didn't know if she had problems crouching, crawling, reaching, handling, fingering, or feeling.  AR 334-335.

Plaintiff testified that she is depressed but her doctor believes she is improving with medication.  AR 335-337.  She stated that she suffers post traumatic syndrome but did not know its cause and that she was a little girl when fleeing Laos.  AR 337-338.

Plaintiff further testified that she has pain in her right side, associated with her hysterectomy in September 2004, but medication helps; that she has pain throughout her abdomen, chest, and low back.  AR 338-339, 342, 193-211.  Plaintiff stated that she has headaches two or three times a day; that she takes medication and falls asleep.  AR 339, 343. She testified that she has asthma controlled by medication, that she takes on her own as needed; she has gastritis, but her medication helps; and she has high blood pressure controlled by medication.  AR 338-340; 342, 345.  Plaintiff takes medication that helps her sleep at night.  AR 345.  Plaintiff occasionally sleeps during the day.  AR 346.

Plaintiff testified that she has diabetes, that her husband tests her blood and gives her medication.  AR 340, 344-345.  She testified that she has tinnitus or ringing in the ears.  AR 342, 340.  She stated that she has memory loss and that she is forgetful.  Her testimony was equivocal whether she has auditory or visual hallucinations.  AR 340-341.

Plaintiff's nineteen-year-old daughter also testified.  AR 321, 348-351.  She stated that she could add nothing new or different than the information provided by her mother's testimony.  AR 348.  She testified that the family tries not to leave plaintiff home alone "[b]ecause we don't want anything to happen to the house.  She can't cook, and she can't clean, so we don't want anything bad to happen."  AR 349-350.  Asked if anything bad had happened yet, plaintiff's daughter stated, "Close, but it wasn't anything bad. . . . Cooking, the pot was kind of like over boiling. . . . a couple of months ago. . . ."  *Id.*  She stated that sometimes her mother will accompany her father to the flea market, where she may talk with customers but he "doesn't let her do anything."  AR 350-351.

A vocational expert also testified.  AR 353-357.  Attributing a sixth-grade education to plaintiff in her native language, no ability to speak English, no past relevant work, and the capacity to perform light work (lift, carry, push, pull 20 pounds occasionally, 10 pounds frequently), with normal capacity to sit, stand and walk (6 hours each in an 8-hour work day), occasional ability to make postural adjustments except no use of ladders, ropes or scaffolds, no ability to tolerate fumes or other hazards, the vocational expert opined that plaintiff would be able to perform the jobs of poultry dresser, bottle packer, or egg breaker, each position existing in significant numbers in the local and national economies.  AR 353-356.  Assuming the same hypothetical, but that plaintiff cannot lift or carry with her right dominant  hand (but could manipulate occasionally), the vocational expert testified that there are no jobs plaintiff can perform.  AR 356-357.

////

////

4

The ALJ issued a decision on June 7, 2007, finding that plaintiff was not disabled.[1] AR

17-23. The ALJ made the following findings:

1. The claimant has not engaged in substantial gainful activity since January 8, 2004, the alleged onset date (20 C.F.R. 416.920(b) and 416.971 et seq.).

2. The claimant has the following severe impairments:  asthma, diabetes mellitus type II, chronic lower back pain, chronic abdominal pain and migraine headaches (20 C.F.R. 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift and/or carry 10 pounds frequently and 20 pounds occasionally; sit, stand and/or walk for 6 hours in an 8-hour workday with normal breaks; push and pull commiserate with the ability to

---

[1]   Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq.*  Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. §§ 1382 *et seq.*  Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits. *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.

Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.

Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.

Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.

Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

*Lester v. Chater,* 81 F.3d 821, 828, n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Bowen*, 482 U.S. at 146, n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five. *Id.*

lift and/or carry; no ability to climb ladders; can occasionally perform all other postural activities; avoid all exposure to hazards; and avoid concentrated exposure to fumes.  The undersigned further finds that the claimant has no limitations performing work-related mental activities.

5.  The claimant has no past relevant work (20 C.F.R. 416.965).

6.  The claimant was born September 10, 1959 and was 44 years old, which is defined as a younger individual age 18-44, on the date the application was filed (20 C.F.R. 416.963).

7.  The claimant has a marginal education and is not able to communicate in English (20 C.F.R. 416.964).

8.  Transferability of job skills is not an issue because the claimant does not have past relevant work (20 C.F.R. 416.968).

9.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. 416.960(c) and 416.966).

10.  The claimant has not been under a disability, as defined in the Social Security Act, since January 8, 2004, the alleged disability onset date (20 C.F.R. 416.920(g)).

On September 19, 2007, the Appeals Council denied plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner.  AR 8-11.

II.  ISSUES PRESENTED

In her motion for summary judgment, plaintiff alleges two errors in the Commissioner's decision:  (1) that the ALJ failed to properly credit the opinion of plaintiff's treating physician, Dr. Augusto Sychukok, regarding plaintiff's residual functional capacity; and (2) that the ALJ therefore failed to properly assess plaintiff's residual functional capacity and as a result failed to pose legally adequate hypothetical questions to the vocational expert.

III.  LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied.  *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*,

1 180 F.3d 1094, 1097 (9th Cir. 1999).

2    The findings of the Commissioner as to any fact, if supported by substantial evidence, are

3 conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985).  Substantial evidence is

4 more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521

5 (9th Cir. 1996).  "'It means such evidence as a reasonable mind might accept as adequate to

6 support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol.*

7 *Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

8    "The ALJ is responsible for determining credibility, resolving conflicts in medical

9 testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir.

10 2001) (citations omitted).  "Where the evidence is susceptible to more than one rational

11 interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."

12 *Thomas v. Barnhart*, 278  F.3d 947, 954 (9th Cir. 2002).

13 IV.  <u>MEDICAL EVIDENCE</u>

14    Plaintiff does not challenge the ALJ's finding that plaintiff does not have a severe mental

15 impairment, based largely on the August 2005 finding of consultative psychologist Janice Y.

16 Nakagawa, Ph.D., that plaintiff was malingering.  AR 277-279.  The following evidence is

17 therefore limited to plaintiff's treatment, consultations, and agency findings regarding her

18 alleged physical impairments.

19    A.  <u>TREATMENT HISTORY</u>

20    Prior to her alleged onset date, January to March 2003, plaintiff was seen by Dr Jaw-Yan

21 Wang for allergy and flu symptoms.  AR 141-142.  Blood tests were normal with the exception

22 of some blood counts being slightly "out of range."  AR 144, 181.

23    Plaintiff obtained emergency care from Methodist Hospital in August 2004, for chest and

24 epigastric pain, headache, and dizziness.  AR 146-165.  She was administered pain and gastric

25 medications, and discharged with a diagnosis of flu.  AR 150.

26 ////

Lab and imaging tests conducted in 2004 demonstrated normal blood tests, AR 165, 170, a normal electrocardiogram, AR 152, 157, normal brain scan, AR 159, 169, normal endoscopic exam, AR 172, normal lumbosacral spine x-rays, AR 176, and unremarkable chest x-rays despite evidence that "inspiratory effort is limited," and heart size could not be determined "because of the position and poor inspiration," AR 158.  Abdominal ultrasound revealed a uterine fibroid. AR 174, 179

Plaintiff obtained a total abdominal hysterectomy in September 2004, for history of fibrotic tumor, menorrhagia and enlarged uterus.  AR 193-211, 208.  Upon plaintiff's discharge, Dr. Chainaronk Limanon, M.D., noted that plaintiff "made a rather rapid recovery and was discharged from the hospital in good condition on September 23rd."  AR 195.  She was given prescriptions for Ibuprofen and Vicodin.  *Id.*

Treatment notes from Sacramento Community Clinic (primarily by plaintiff's treating physician, Dr. Augusto Sychukok, M.D.) reference regular treatment from November 2004 to February 2007, for asthma and upper respiratory infections, and for diabetes diagnosed in August 2006.  AR 290-315.  In June 2006, plaintiff complained of right hand numbness.  AR 300.  Dr. Sychukok found no neurological or focal deficit.  *Id.*  In September 2006, Dr. Sychukok noted plaintiff's complaints of right hand numbness for eight weeks, which he diagnosed as "associated to diabetes," and peripheral neuropathy, without focal weakness, and prescribed Neurontin.  AR 294.  Dr. Sychukok noted numbness in plaintiff's feet in October 2006, diagnosed as peripheral neuropathy, without focal weakness, for which he prescribed Lyrica.  AR 293.

In a "Medical Assessment of Ability to Do Work-Related Activities (Physical)," completed March 1, 2007, Dr. Sychukok made a principal diagnosis of "asthma, URI," a secondary diagnosis of "hypertension/Dm [diabetes mellitus] ID," and opined that plaintiff's asthma and diabetes limited her residual functional capacity to walking 1-2 hours in an 8-hour workday, standing 2-4 hours, and sitting 1-2 hours.  AR 316.  He opined that plaintiff could

occasionally lift and carry up to 20 pounds and could perform "light duty" because her asthma and diabetes are under control with medication, but that she would require rest periods during the day and could not work an eight-hour day, five days a week. AR 317, 318. Dr. Sychukok opined that plaintiff was not restricted from climbing stairs or ladders, or from bending or stooping. He noted no emotional problem or mental dysfunction. AR 317. Dr. Sychukok opined that plaintiff's complaints of pain were credible, at a level of 5 on an ascending scale of 0-10, but that he expected improvement with medications and exercise. AR 318. See also, AR 167 (undated "Assessment of Physical and Mental Activities" by Dr. Sychukok, in which all findings were "fair" with the exception of memory, designated "poor").

Plaintiff's medications prescribed by Dr. Sychukok included Advair, Aluterol, Benase, Norvase, Ostcalcium, Pirosicam and Prevacid. AR 128, 132. Medications prescribed by Dr. Fallon included Metoformin, Lotrel, Pro Air HFA, and Advair. AR 138.

B. CONSULTATIVE EXAMINATIONS

In February 2005, plaintiff was examined by internist Jewel Johl, M.D., with the assistance of plaintiff's daughter as interpreter. AR 220-224. Plaintiff's chief complaints were headaches, stomach discomfort, and asthma. AR 220. Plaintiff reported that her headaches are triggered by "bad dreams," without focal neurological symptoms or seizure activities, and happen two to three times per month; the symptoms are relieved by rest and occasional pain relievers. Plaintiff stated that her stomach symptoms are intermittent, without nausea or vomiting, and appear related to certain foods. Plaintiff stated that she has had asthma since 1993, but it is relieved with bronchodilators. AR 220-221. The physical examination demonstrated normal findings. AR 221-223. Plaintiff measured 4'9" tall, and weighed 134 pounds. AR 221. Dr. Johl diagnosed "tension type headaches, possible gastroesophageal reflux disease, and mild asthma." AR 223. He concluded that there were no restrictions on the number of hours plaintiff can sit, stand and walk in an eight-hour day, no restrictions on the amount of weight plaintiff can frequently lift or carry, no postural limitations with respect to bending,

stooping or crouching, and no manipulative restrictions.  AR 223-224.

C. <u>STATE AGENCY REVIEWS</u>

On February 19, 2005, State Agency physician J. Barajas, M.D., completed a Mental Residual Functional Capacity Assessment.  AR 225-227.  Dr. Barajas found limitations only in plaintiff's ability to understand and remember detailed instructions, and her ability to carry out detailed instructions.  AR 225.  This assessment was approved by another physician (appears to be Dr. Morrison) on February 23, 2005, AR 227, who in turn completed a Psychiatric Review Technique form, in which he found plaintiff's allegations and symptoms only mild.  AR 229-242.

On March 8, 2005, another State Agency physician (name not provided) completed a Physical Residual Functional Capacity Assessment, finding no limitations with the exception of limited depth perception requiring that plaintiff drive no more than two-thirds of a workday.  While finding that plaintiff has medically determinable impairments of asthma, migraines, dizziness, sleep and intestinal problems, the physician concluded that these impairments did not significantly limit plaintiff's capacity to perform gainful employment.  AR 243-250.

On June 16, 2005, State Agency physician Millie Robinson, M.D., reviewed plaintiff's file and concluded that plaintiff's only work restrictions were associated with her vision.  AR 253-254.

On June 20, 2005, State Agency physician Antoine Dipsia completed a Physical Residual Functional Capacity Assessment, finding that plaintiff's only limitations were associated with her asthma and need to avoid fumes, odors, dusts, gases, poor ventilation, and mechanical hazards.  AR 255-262.

V. <u>THIRD PARTY STATEMENTS</u>

Plaintiff's sister-in-law, who sees plaintiff two to three times a week, completed a third party statement in May 2005  AR 115-123.  She stated that plaintiff generally cleans up a couple of hours in the morning, then takes her medication and watches a little television or listens to

music or Hmong radio.  Plaintiff needs reminders regarding how and when to take her
medications, to close the door when she bathes, and to button her shirt correctly; she does not
prepare her own meals because she has a mental disorder that may cause hazards to herself and
her family.  She gets mad easily and sometimes talks to herself.   Plaintiff's sister-in-law noted
that plaintiff has problems, *inter alia*, lifting and walking, but did not designate problems in
standing, sitting, or using her hands.

VII.  DISCUSSION

Plaintiff first contends that the ALJ mischaracterized the opinion of Dr. Sychukok,
plaintiff's treating physician, as set forth in his March 2007 "Medical Assessment of Ability to
Do Work-Related Activities (Physical)," AR 316-318, and then relied on that
mischaracterization to improperly support his conclusion that plaintiff can perform the full range
of light work.  *See* 20 C.F.R. § 416.967(b),[2] and Social Security Ruling 83-10 (full range of light
work requires standing or walking up to 6 hours in an 8-hour workday)).  At issue is the
following reasoning of the ALJ:

> [T]he claimant's treating physician issued a medical source statement on March 1,
> 2007.  (Exhibit B19F).  Her physician gave contradictory statements regarding
> her ability to work.  The physician stated the claimant could only sit for a total of
> 1 to 2 hours in an 8-hour workday and stand and/or walk for no more than 2 to 4
> hours in an 8-hour workday, yet assessed her with having the residual functional
> capacity to perform light work, which exceeds the level of sitting, standing or
> walking assessed by the physician.  The undersigned is unable to fully credit the
> opinions of claimant's treating physician as they are not supported by the
> claimant's treatment records.  However, the undersigned finds that the record
> supports the opinion of the treating physician that the claimant retains the
> capacity to perform light work.

AR 21.

---

[2]  "Light work involves lifting no more than 20 pounds at a time with frequent lifting or
carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a
job is in this category when it requires a good deal of walking or standing, or when it involves
sitting most of the time with some pushing or pulling of arm or leg controls. To be considered
capable of performing a full or wide range of light work, you must have the ability to do
substantially all of these activities."  20 C.F.R. § 416.967(b).

1      While plaintiff's contention is, superficially, correct, at least insofar as Dr. Sychukok

2  expressly found that plaintiff requires rest periods and cannot, therefore, work 8 hours a day, 5

3  days a week, the maximum weight and hours Dr. Sychukok found plaintiff could perform are

4  consistent with the Commissioner's definition of light work.  More importantly, the ALJ's

5  conclusion that plaintiff can perform the full range of light work is supported by the record as a

6  whole.  The ALJ prefaced the above reasoning with reliance on the opinion of examining

7  consultative internist Dr. Juhl, and a non-examining State Agency physician:

8          In assessing her ability to perform work-related physical activities, a physician
         who performed a comprehensive internal medicine evaluation of the claimant on
9          February 19, 2005 stated that she had no exertional limitations.  (Exhibit B8F).
         On June 20, 2005, a medical consultant with the state agency stated that the
10         claimant had no work-related physical limitations, aside from avoiding moderate
         exposure to fumes, dusts and gases due to asthma.  (Exhibit B13F).

11

12  AR 21.  These medical sources, taken together, provide substantial evidence in support of the

13  ALJ's conclusions.

14      "A treating physician's opinion is entitled to 'substantial weight.'  *Embrey v. Bowen*, 849

15  F.2d 418, 422 (9th Cir. 1988).  When evidence in the record contradicts the opinion of a treating

16  physician, the ALJ must present 'specific and legitimate reasons' for discounting the treating

17  physician's opinion, supported by substantial evidence.  *Lester v. Chater,* 81 F.3d 821, 830 (9th

18  Cir. 1995).  However, '[t]he ALJ need not accept the opinion of any physician, including a

19  treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical

20  findings.' *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002)." *Bray v. Commissioner of*

21  *Social Security Administration*, 554 F.3d 1219, 1228 (9th Cir. 2009).  The "opinions of

22  non-treating or non-examining physicians may also serve as substantial evidence when the

23  opinions are consistent with independent clinical findings or other evidence in the record."

24  *Thomas v. Barnhart*, 278 F.3d at 957.  An ALJ may properly rely upon only selected portions of

25  a medical opinion while rejecting other parts.  *See, e.g.*, *Magallanes v. Bowen*, 881 F.2d 747, 753

26  (9th Cir. 1989) (ALJ's supported reliance on selected portions of conflicting opinion constitutes

1  substantial evidence).  However, such selective reliance must be consistent with the medical

2  record as a whole.  *See*, *e.g.*, *Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001) (ALJ

3  cannot reject portion of medical report that is clearly reliable).

4      Dr. Sychukok's conclusory statement that plaintiff requires rest periods during a routine

5  workday is without explanation.  Although plaintiff asserts that this finding is attributable to

6  plaintiff's asthma and diabetes, *see* Pl.'s Mot. at 23, there is no basis for this in the record.  To

7  the contrary, Dr. Sychukok specifically found that plaintiff's asthma and diabetes were "under

8  control."  AR 317.  Plaintiff's argument that Dr. Juhl's opinions should be discredited because he

9  examined plaintiff prior to her diagnoses of diabetes and neuropathy is also not persuasive since,

10 two years later, Dr. Sychukok found plaintiff's diabetes controlled by medication, and identified

11 no limitations attributable to plaintiff's neuropathy (which was identified in his treatment records

12 only three times).  Plaintiff's suggestion – without argument – that the ALJ improperly

13 discredited her subjective physical complaints is also unpersuasive in light of the ALJ's express

14 and unchallenged rejection of plaintiff's subjective complaints relative to her alleged mental

15 impairment.  Finally, the ALJ's conclusion that plaintiff can perform the full range of light work

16 is supported by the opinion of the State Agency physician, who found only environmental

17 limitations associated with plaintiff's asthma.

18     Plaintiff further contends that the ALJ was required to re-contact Dr. Sychukok to clarify

19 his opinion.  However, an ALJ need only further investigate ambiguous matters that may have a

20 material impact on the disability decision.  *See Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir.

21 1996); *Wainwright v. Sec'y of Health and Human Svcs.*, 939 F.2d 680, 682 (9th Cir. 1991).  In

22 light of the record as a whole, Dr. Sychukok's opinion concerning rest periods was not

23 ambiguous, but unsupported.

24     Plaintiff next contends that the ALJ erred in failing to include all of the limitations set

25 forth in Dr. Sychukok's Assessment in the hypothetical questions presented to the vocational

26 expert, and then relied on by the ALJ in finding that there are a significant number of jobs that

1  plaintiff can perform.  Hypothetical questions posed to a vocational expert must set out all the

2  substantial, supported limitations and restrictions of the particular claimant.  *Magallanes v.*

3  *Bowen*, 881 F.2d 747, 756 (9th Cir. 1989).  If a hypothetical does not reflect all the claimant's

4  limitations, the expert's testimony as to jobs in the national economy the claimant can perform

5  has no evidentiary value.  *DeLorme v. Sullivan*, 924 F.2d 841, 850 (9th Cir. 1991).  While the

6  ALJ may pose to the expert a range of hypothetical questions, based on alternate interpretations

7  of the evidence, the hypothetical that ultimately serves as the basis for the ALJ's determination

8  must be supported by substantial evidence in the record as a whole.  *Embrey v. Bowen*, 849 F.2d

9  418, 422-23 (9th Cir. 1988).

10       Of concern to plaintiff was the ALJ's omission of Dr. Sychukok's findings that plaintiff

11  cannot work full-time and requires rest periods during the workday, as well as the ALJ's express

12  rejection of the vocational expert's testimony that there are no available jobs if plaintiff cannot

13  lift or carry with her right dominant hand.  For the reasons discussed above, the ALJ's reliance

14  on the hypothetical questions supporting his residual functional capacity assessment is supported

15  by substantial evidence.

16       Plaintiff's further assertion that each of the jobs identified by the vocational expert have a

17  "Level 1" language development requirement that plaintiff does not meet, is also without merit.

18  *See* Pl.'s Mot. at 27.  Based on the hypothetical relied upon by the ALJ, the vocational expert

19  specifically considered that plaintiff had a sixth-grade education in her native tongue and no

20  ability to speak English.  AR 353-356.  The jobs identified by the vocational expert – poultry

21  dresser, bottle packer, and egg breaker – included these limitations, consistent with the job

22  descriptions provided by plaintiff, *see* Pl.'s Mot. at 26, as set forth in the Dictionary of

23  Occupational Titles.

24       The court therefore concludes that the hypothetical questions posed to the vocational

25  expert and relied upon by the ALJ accurately reflect plaintiff's residual functional capacity as

26  supported by substantial evidence of record.

VIII.  <u>CONCLUSION</u>

     For the foregoing reasons, IT IS HEREBY ORDERED that:

     1. Plaintiff's motion for summary judgment or remand, Docket No. 19, is denied;

     2. The Commissioner's cross-motion for summary judgment, Docket No. 20, is granted;

     3. The Clerk is directed to enter judgment for the Commissioner.

DATED:  March 1, 2010.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE